IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| YAN LIU, on behalf of herself and others similarly situated, | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:24-cv-1999-K |
| M. BERKSON LLC, d/b/a NEWBORN ADVANTAGE SURROGACY, MINDY B. BERKSON, and SANTA MONICA FERTILITY CENTER, LLC, | § § § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Through a second amended class action complaint (the "SAC"), Plaintiff Yan Liu alleges that Defendants M. Berkson LLC d/b/a Newborn Advantage Surrogacy and Mindy B. Berkson breached a contract, committed common law fraud, and violated the Texas Deceptive Trade Practices Act ("DTPA"), the New York Deceptive Trade Practices Act ("GBL § 349"), and the New York False Advertising Law ("GBL § 350") and seeks to certify a class action under Federal Rule of Civil Procedure 23. *See* Dkt. No. 30.

Defendants moved to dismiss the claims in the SAC under Federal Rules of Civil Procedure 12(b)(6), 8(a), and 9(b) and, in the alternative, to strike or dismiss the class allegations. *See* Dkt. No. 32.

And, after Plaintiff responded to the motion and Defendants replied, *see* Dkt. Nos. 34 & 35, United States District Judge Ed Kinkeade referred the motion to the

undersigned United States magistrate judge for hearing, if necessary, and for findings and recommendation, *see* Dkt. No. 36; 28 U.S.C. § 636(b).

For the reasons set out below, the undersigned recommends that the Court grant in part and deny in part the motion to dismiss and/or strike.

## Legal Standards

A motion under Rule 12(b)(6) is "not meant to resolve disputed facts or test the merits of a lawsuit" but "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Considering such a motion, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

But a plaintiff still must plead "enough facts to state a claim to relief that is plausible on its face" and must plead those facts with enough specificity "to raise a right to relief above the speculative level" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 555 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

So a court's "obligation [is] to accept [the] complaint's factual allegations as true and assess whether those facts permit a reasonable inference that [a defendant] is liable." *Sewell*, 974 F.3d at 581; *cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024

WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see, e.g.*, *Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied.").

And, while Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, it does require that a plaintiff allege more than labels and conclusions. So, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of*

*Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

Summed up, "to survive" dismissal under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

But, "[w]hen a plaintiff alleges a claim of fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires that the plaintiff 'state with particularity the circumstances constituting [the] fraud.'" *Wesdem, L.L.C. v. Ill. Tool Works, Inc.*, 70 F.4th 285, 293 (5th Cir. 2023) (quoting FED. R. CIV. P. 9(b)).

"Rule 9(b) is a pleading rule whose requirements must be met within the contents of the complaint alone." *Elson v. Black*, 56 F.4th 1002, 1009 n.6 (5th Cir. 2023) (citing *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)).

And it "applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Id.* at 1008 (quoting *Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d 363, 368-69 (5th Cir. 2001); citation omitted).

So, "'[w]here averments of fraud are made in a claim in which fraud is not an element,' a court must 'disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated.'" *Id.* (quoting *Lone Star Ladies*, 238 F.3d at 368).

"The application of Rule 9(b) is thus fatal when a claim is premised entirely upon a course of fraudulent conduct that is not sufficiently pled." *Id.* (citation

omitted).

"Rule 9(b), in turn, demands 'the who, what, when, and where to be laid out before access to the discovery process is granted.' [And, so, a plaintiff generally] must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Elson*, 56 F.4th at 1009 (cleaned up; quoting *Williams*, 112 F.3d at 178, 177).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen an allegation is contradicted by the contents

of an exhibit attached to the pleading," "the exhibit and not the allegation controls." *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (cleaned up; quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011).

But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

## Analysis

In February 2022, Plaintiff and her husband entered into an agreement with

- 6 -

Newborn Advantage for surrogacy services [Dkt. No. 30-1] (the Case Management Agreement or "CMA") that Plaintiff alleges Defendants breached by "failing to produce adequate surrogates within a reasonable period of time," *e.g.*, Dkt. No. 30, ¶ 112.

Plaintiff further alleges that "Defendants intentionally made materially false and misleading representations regarding the nature of Newborn Advantage services" that amount to fraud. *E.g.*, *id.*, ¶ 103.

Plaintiff also alleges that Defendants' "use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale of Defendants' services at Newborn Advantage" violated the DTPA and similar provisions of New York's consumer protection laws. *E.g.*, *id.*, ¶ 81; *see also, e.g.*, *id.*, ¶¶ 87-101.

And Plaintiff seeks class treatment for these claims, requesting that the Court certify a nationwide class of all persons "who, within the applicable limitations period, (1) were paying clients of Defendants; (2) had not been matched with a suitable surrogate[ – that is "a surrogate that was chosen by the Class member and passed all required medical and psychological clearance evaluations" – ]within 2 weeks of retaining Defendants; and (3) were not refunded in full the Case Management Fee they paid to Defendants." *Id.*, ¶ 56 & n.14 (cleaned up).

Considering Defendants' pending motion, the undersigned will take each claim in turn to determine whether Defendants have shown "that, even in [Plaintiff's] best-

case scenario, the [SAC] does not state a plausible case for relief," and, so, the undersigned may not make recommendations that turn on "resolv[ing] disputed facts or test[ing] the merits of" Plaintiff's claims. *Sewell*, 974 F.3d at 581.

### I.    Plaintiff has alleged a plausible breach of contract claim.

"The elements of a breach of contract action under Texas law are: '(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Hunter v. Navy Fed. Credit Union*, 749 F. Supp. 3d 743, 748 (N.D. Tex. 2024) (quoting *Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007))).

And, so, a plaintiff "is required at the Rule 12(b)(6) stage to plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged' … by alleging facts that, credited in her favor, plausibly establish each of the elements of the breach of contract claim." *Hoffman v. L & M Arts*, 774 F. Supp. 2d 826, 835-36 (N.D. Tex. 2011) (quoting *Iqbal*, 556 U.S. at 678).

Defendants do not appear to contest the first, second, and fourth elements of Plaintiff's contract claim. They instead focus on the breach element: "Liu contends that Defendants breached the CMA by 'failing to produce adequate surrogates within a reasonable period of time' (SAC ¶ 112), but the SAC does not show that Newborn (i) did not identify adequate surrogates under the CMA, or (ii) that it unreasonably

delayed in doing so." Dkt. No. 32 at 16.

And, while Defendants assert that Plaintiff fails to allege how the CMA was breached, at the same time they point to "paragraph 4 of the CMA (SAC ¶ 52), which provides in part that 'if the selected surrogate[] does not pass Medical Clearance and psychological screening, then, Newborn Advantage will find another suitable surrogate match for no additional Case Management Fee'" as a possible basis for Plaintiff's theory of breach and argue that, "if the arrangement with the first surrogate identified (here, Amber from Texas) was terminated, then Newborn had to identify one additional candidate at no charge. And by the SAC's allegations, Liu concedes that at least one candidate passed screening, and it is unclear from her allegations whether any failed Medical Clearance, or whether they simply 'proved otherwise unsuitable.' (SAC ¶ 40.)." Dkt. No. 32 at 17.

Defendants relatedly argue that no facts in the SAC reflect a failure to perform under the CMA "within a reasonable period of time." *Id.* at 17-18.

Defendants' arguments may ultimately prevail. But they should not at this stage of the litigation where Plaintiff has alleged enough factual content "credited in her favor" to "plausibly establish each of the elements of the breach of contract claim." *Hoffman*, 774 F. Supp. 2d at 835-36.

As to this claim, the parties' briefing spends considerable time on whether the other side performed reasonably under the terms of the contract. *Compare, e.g.*, Dkt. No. 32 at 17 ("The SAC does not establish that Newborn's performance was unreasonable in any way. Matching surrogacy candidates is not like buying cattle at

auction; a human with choice and rights must agree. Newborn has no control over the length of time it took Liu's medical provider to evaluate each of the six candidates that Newborn presented."), *with, e.g.*, Dkt. No. 34 at 8 ("While Defendants might not have had 'control over the length of time it took Liu's medical provider to evaluate' candidates, they did have control over which candidates they presented to Plaintiff in the first place. And their consistent inability or unwillingness to offer medically suitable candidates led to Plaintiff's ordeal of nearly two years. Defendants argue that Plaintiff 'identifies nothing unreasonable with how long it took Newborn' to identify candidates." (citation omitted)).

But a court should not "parse" such issues at this stage. *WG Monterrey Venture LLC v. DIG Monterrey Vill., LLC*, No. SA-20-CV-0533-JKP-ESC, 2021 WL 327708, at *3 (W.D. Tex. Feb. 1, 2021) ("While Defendants cannot state a breach of contract claim for failure to disclose under § 7.6 if 'already' means prior to the Effective Date, the Court declines to parse the meaning at this stage of the proceeding.").

Because, to do so, would amount to "resolv[ing] disputed facts or test[ing] the merits of" Plaintiff's contract claim. *Sewell*, 974 F.3d at 581.

Instead, it is enough to survive Rule 12(b)(6) on this claim that Plaintiff has alleged sufficient facts accepted as true to support her theory of how Defendants breached the CMA. *Cf. Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 603 (N.D. Tex. 2014) ("Plaintiffs failed to allege enough facts about the terms of the plans to raise their right to relief above the speculative level" because they "do not identify what provisions were breached or

provide factual allegations about the terms of the plans." (collecting cases)).

## II. Defendants have not shown either that Texas's economic loss rule or that New York law that is functionally equivalent precludes Plaintiff's tort claims.

Defendants next argue that Plaintiff's remaining claims must be dismissed because the "the DTPA [and] the common-law fraud claim[s] … duplicate Liu's breach of contract claim" – and are thus barred by Texas's economic loss rule – while "New York similarly holds that '[a] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated and where plaintiff is essentially seeking enforcement of the bargain," and, so, the GBL §§ 349 and 350 claims must be dismissed. *E.g.*, Dkt. No. 32 at 18-19 (quoting *IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*, 220 N.E.3d 646, 656 (N.Y. 2023)).

> [T]he acts of the parties to a contract "may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." This is generally known as the economic loss rule.

*Choe v. Bank of Am., N.A.*, No. 3:13-cv-120-D, 2013 WL 6159308, at *6 (N.D. Tex. Nov. 25, 2013) (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986), then citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011)).

And, so, "[u]nder Texas law, the economic loss rule 'generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract.'" *TIB – The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 670 (N.D. Tex. 2014) (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.,*

242 S.W.3d 1, 12 (Tex. 2007)); *accord Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam) ("The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." (citations omitted)).

That is, "[i]n operation, the rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence," for example. *Lamar Homes*, 242 S.W.3d at 12-13 (citation omitted).

But "[n]ot all tort claims ... 'arising out of a contractual setting' are precluded by the rule." *Money Title v. Hancock Whitney Bank*, No. 3:25-cv-2491-D, 2026 WL 26127, at *6 (N.D. Tex. Jan. 5, 2026) (quoting *Chapman Custom Homes*, 445 S.W.3d at 718).

> To determine whether the economic loss rule bars a tort claim, the court must analyze both the source of the duty and the nature of the remedy. [And, i]f the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit, the economic loss rule does not apply.

*Id.* (cleaned up).

Neither Texas's economic loss rule nor similar New York precedent supports dismissal under Rule 12(b)(6) here. Plaintiff plausibly alleges liability that is more than contractual in nature where it's alleged that Plaintiff suffered harm based on misrepresentations on Defendants' website or social media that preceded the parties' contract. *See, e.g.*, Dkt. No. 30, ¶¶ 17-20; *compare also, e.g.*, Dkt. No. 34 at 12 ("Defendants have a duty to refrain from deceptive marketing irrespective of

whatever contract may later be signed by those relying on that marketing."), *with Choe*, 2013 WL 6159308, at *6 ("This case is not, as BOA argues, one in which the sole basis for liability against the defendant is contractual in nature. The Choes do not seek to hold BOA liable for actions that would breach the terms of the note and deed of trust. Rather, they allege that BOA made certain misrepresentations of material fact during the loan modification application process that, in turn, led the Choes to mistakenly believe that 'their responsibility was finished.' They assert that, '[h]ad [BOA] been straight-forward from the beginning ... then payments could have been made and foreclosure avoided.' As pleaded, the nature of the Choes's injury is one stemming from acts of fraud, not breach of the note or deed of trust. Accordingly, the economic loss doctrine does not bar the Choes's fraud claim." (citations omitted)).

### III.   The Court should grant the motion to dismiss as to the common-law-fraud, DTPA, and GBL claims because Plaintiff's allegations fall short of what Rule 9(b) requires here.

"The elements of common law fraud in Texas are: (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result." *Choe*, 2013 WL 6159308, at *4 (cleaned up).

> Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud. At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby – "the 'who, what, when, where, and how' of the fraud.

*Id.* (cleaned up).

But, as "Rule 9(b) must be read in conjunction with Rule 8 which requires only a short and plain statement of the claim showing that the pleader is entitled to relief, punctilious pleading detail is not required." *Id.* (cleaned up)

> Which means
>
> that "Rule 9(b)'s ultimate meaning is context-specific," and thus there is no single construction of Rule 9(b) that applies in all contexts. Depending on the claim, a plaintiff may sufficiently "state with particularity the circumstances constituting fraud or mistake" without including all the details of any single court-articulated standard – it depends on the elements of the claim at hand.

*United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009) (quoting *Williams*, 112 F.3d at 178).

And, so, a "court's key concern in assessing a complaint under Rule 9(b) is to determine whether the plaintiff seeks to redress specific wrongs or whether the plaintiff instead seeks the opportunity to search out actionable wrongs." *Choe*, 2013 WL 6159308, at *4 (cleaned up).

And, at least in a federal district court in this circuit, where the rule "applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not," *Lone Star Ladies*, 238 F.3d at 368, its requirements apply to Plaintiff's DTPA claim, *see, e.g.*, *Kumar v. Panera Bread Co.*, No. 23-20178, 2024 WL 1216562, at *4 (5th Cir. Mar. 21, 2024) (per curiam) ("In federal court, a complaint alleging violations of the DTPA is subject to the requirements of [Rule] 9(b), which requires that fraud be pleaded 'with particularity.'" (citing *Lone Star Ladies*, 238 F.3d at 368; *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009))).

Those requirements similarly apply to Plaintiff's GBL §§ 349 and 350 claims

in this venue. *See Elson*, 56 F.4th at 1008-09 (relying in large part on *Lone Star Ladies*, 238 F.3d at 368-69, and concluding that "[t]he district court [ ] correctly subjected the Section 349 and 350 claims to the heightened pleading requirements of Rule 9(b)"); *compare Baldeo v. Airbnb, Inc.*, 20-CV-7771 (PGG) (VF), 2023 WL 7689652, at *11 (S.D.N.Y. Sept. 29, 2023) ("Claims under GBL § 349 need not meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." (citing *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020))), *rec. adopted*, 2024 WL 1367189 (S.D.N.Y. Mar. 30, 2024), *aff'd*, 2025 WL 3152716 (2d Cir. Nov. 12, 2025).

Turning to the allegedly fraudulent misrepresentations in this lawsuit, Plaintiff's complaint includes two undated screen captures from what is represented to be Newborn Advantage's website and a post dated October 13, 2023 from what is represented to be Newborn Advantage's Facebook page – which all promote "faster matching" that "will place you with the perfect candidate within two weeks" or "rapid matching, with a two-week turnaround" or an "industry-leading average match time of 0-2 weeks [that] ensures that you embark on your surrogacy journey without unnecessary delays." Dkt. No. 30, ¶¶ 17-19.

And, as Plaintiff alleges, "[i]n reliance on Defendants' website representations, Plaintiff contacted Defendant Berkson to discuss retaining her surrogate matching services." *Id.*, ¶ 23.

And, as alleged throughout the complaint (and as the discussion above reflects), Plaintiff's claims depend in large part on the quick turnaround time that

she alleges Defendants misrepresented through their website and social media. *See, e.g., id.*, ¶ 25 ("Newborn Advantage stresses that it can find 'the perfect candidate' in two weeks or less and contrasts this speediness with normal average wait times at other surrogacy agencies, 'who can take up to 8 months to match you with the right candidate.' This is patently false."); *id.*, ¶ 28 ("Defendants claim that they can deliver a suitable surrogate in about 1/16th the time required by other surrogacy agencies (two weeks versus eight months). However, it can take other agencies eight months because those eight months include all the months required to first wait for, and then undergo, the medical clearance evaluations. It can take Newborn Advantage a mere two weeks to find a match because finding a match, as implicitly defined by Newborn Advantage, does not include the many months required for medical clearance evaluations." (cleaned up)).

This two-week timeline is even included in the proposed class definition. *See* Dkt. No. 30, ¶ 56.

But the shortcoming for Plaintiff's current allegations from a Rule 9(b) perspective is that the Court cannot reasonably infer from the facts alleged that Plaintiff relied on the statements that are alleged to be fraudulent misrepresentations where all she offers is a conclusion that fails to identify a specific representation – "[i]n reliance on Defendants' website representations" – and, more so, the internet screen captures that are included in the complaint are either undated or post-date the February 2022 surrogacy contract.

Absent such critical factual content, the Court can only speculate as to what

statements induced Plaintiff to initiate her relationship with Defendants. *Cf. Lee v. Samsung Elecs. Am., Inc.*, 717 F. Supp. 3d 585, 591 (S.D. Tex. 2024) ("[T]he requirement of particularity in fraud pleadings is meant to provide defendants with fair notice of the claims, protect defendants from harm to reputation and goodwill arising from speculative pleadings, and preclude plaintiffs from bringing suit as a pretext for discovery in order to discover whether any fraud actually occurred." (quoting *Stevens v. Ford Motor Co.*, No. 2:18-CV-456, 2020 WL 12573279, at *4 (S.D. Tex. Nov. 2, 2020) (citations omitted))).

And, so, while Rule 9(b)'s "when" requirement may not matter in every context, it matters in this case – where the contract at issue lacks the two-week language and the allegedly fraudulent misrepresentations appeared on a website (or after the fact in a social media post).

That is at least because there are no plausible allegations here that the website at issue was static – and, in reality, most websites change often. *See, e.g., Gayou v. Celebrity Cruises, Inc.*, No. 11-23359-Civ, 2012 WL 2049431, at *7 (S.D. Fla. June 5, 2012) ("Gayou must be more precise temporally. This is especially significant as to the representations he claims were present on Celebrity's website. Gayou baldly asserts that 'website material typically remains static,' but experience tells us the opposite is true. Website content is updated and changed all the time. The importance of 'when' cannot be understated here. These counts are dismissed for failure to comply with Rule 9(b)." (cleaned up)); *see also Hidden Values, Inc. v. Wade*, No. 3:11-cv-1917-L, 2012 WL 1836087, at *7 (N.D. Tex. May 18, 2012) ("The court concludes that

Wade's pleadings … are not sufficiently specific as to when the alleged fraudulent conduct took place, that is, when did Wade view what she contends were misrepresentations on HVI's website.").

So, absent factual content on Rule 9(b)'s "when" requirement, the Court should dismiss the non-contract claims but consider granting Plaintiff leave to amend, as it's likely Plaintiff could amend the allegations to provide the missing factual content that's required here.

### IV. The Court should not strike or dismiss Plaintiff's class allegations at this point.

Because "[t]he existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23," "[w]here it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *John v. Nat. Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (footnotes omitted); *see, e.g.*, *McCumber v. Invitation Homes, Inc.*, No. 3:21-cv-2194-B, 2022 WL 1747855, at *4 (N.D. Tex. May 31, 2022) ("The subclasses do not include a time period for when the proposed classes were charged a late fee. The lack of a temporal limitation proves fatal for the class allegations, because the Court cannot determine the beginning or end date for each of the proposed subclasses." (cleaned up)).

And, although Rule 23 "allows courts to 'require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly,'" *Starling v. J Wales Home Solutions LLC*, No. 4:21-cv-1261-O,

2022 WL 1156021, at *4 (N.D. Tex. Apr. 19, 2022) (quoting FED. R. CIV. P. 23(d)(1)(D)), "[f]ederal courts have invoked Rule 23 'in rare cases' to strike class allegations from the complaint prior to discovery," *id.* (quoting *Delarue v. State Farm Lloyds*, No. 1:09-cv-237, 2010 WL 11530499, at *2 (E.D. Tex. Mar. 10, 2010)).

And, so, "[t]he cases 'generally show that motions to strike are often denied early in the litigation as premature,' and courts 'favor[ ] discovery before striking class action allegations.'" *Id.* (quoting *Delarue*, 2010 WL 11530499 at *3 (collecting cases)); *see also Delarue*, 2010 WL 11530499 at *4 ("The class determination 'generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" And, so, "[d]iscovery is integral to developing the 'shape and form of a class action.'" (quoting *Hibbs-Rines v. Seagate Techs., LLC*, No. C 08-05430 SI, 2009 WL 513496, at *3 (N.D. Cal. Mar. 2, 2009))).

While it may be moot to the extent that the Court accepts the undersigned's recommendation and dismisses the complaint in significant part under Rule 9(b), if the Court then allows leave to amend, the undersigned recommends that, under the authority set out above, it is too early to strike or dismiss the class action allegations. Plaintiff has alleged an ascertainable class and should be allowed discovery to determine whether such a class may be certified under Rule 23.

## Recommendation

The Court should grant in part and deny in part Defendants' motion to dismiss [Dkt. No. 32] to the extent that the Court should dismiss Plaintiff's claims for common law fraud and under the Texas Deceptive Trade Practices Act, the New York

Deceptive Trade Practices Act, and the New York False Advertising Law under Federal Rule of Civil Procedure 9(b).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 23, 2026

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE